May it please the Court, Albert Chow for the Petitioner, Hong Ji. Your Honors, this is an asylum case based upon political opinion. And there are three main issues in this case. The first is whether or not the Petitioner testified credibly. The second, whether any corroborating evidence is required in this case. And the third is whether or not the corroborating evidence that was submitted is enough to meet the burden of proof. Now, in this particular case, the Ninth Circuit has stated on many occasions, in Vada v. INS, 215 F. 3rd, 902, 9th Circuit, 2000, quote, an alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration. And in his own decision, the immigration judge stated, quote, his testimony has been detailed, has been consistent, and there are no important inconsistencies that have been called to the Court's attention. In fact, much of the individual's testimony in this case the Court does find credible. The immigration judge even admitted that this testimony is credible. So why did the judge deny this case? Because there was a small portion of his testimony that the judge found, quote, improbable. He states, the judge does not find convincing his method of departure from the hospital. Is this possible? Yes, but the Court finds that it is so improbable as to not be worthy of belief. The immigration judge in this case essentially invalidated what he himself stated was credible testimony because there was a small portion of the testimony that he found to be implausible. And in this case, the immigration judge did not support this adverse credibility finding with any specific inconsistencies or any specific facts at all. He merely stated that he found this testimony to be implausible. And that is absolutely speculation and conjecture, which the Ninth Circuit has stated on many times, is impermissible to deny an asylum case on. And, of course, the Ninth Circuit has stated on many occasions that there must be a legitimate and articulable basis to question a petitioner's credibility, and there must be a specific, cogent reason for any stated disbelief. Again, the immigration judge did not state any specific reason for his disbelief other than implausibility. And what was it about the escape that he found implausible? Well, the immigration judge really didn't specify what it was that he found implausible. I think he just stated the overall nature of the event because the petitioner had testified that he was hospitalized for partly for, I guess, an old illness and partly due to injuries that he suffered as a result of his detention. But the immigration, he stated the petitioner testified that his wife had helped him to, I guess, put some medicine into a police officer's cup, which caused him to fall asleep, and then the petitioner just walked out of the hospital. And, essentially, the immigration judge just found that entire, I guess, testimony to be implausible. Did he make any findings or was there anything in the record about conditions in Chinese hospitals and how they're the same or different from American hospitals? No, there was nothing in the record. This was not stated before. Yeah, he was basically imposing his idea of what a United States hospital is like into what a Chinese hospital is like. And, in fact, they're very different. Exactly. I've had a random-minded partner, Edel Melvin Myers, who actually was hospitalized in a Chinese hospital. And the conditions have been described to me, and it's very different from a United States hospital. Yes, absolutely. And that's what I'm saying here regarding the judge, you know, using speculation and conjecture. And I'd also submit to this Court that there was corroborating evidence that was submitted in this case. There was a medical document, a hospital booklet, that stated not only that the petitioner had had this previous illness, which is hard to pronounce, but it is essentially an inflammation of the gallbladder, but also that the petitioner had suffered subcutaneous blood clots. And the judge essentially stated in this case, you know, well, I'm willing to find that these injuries are caused by his worker union activities. Well, I don't know what kind of evidence we could have submitted that could corroborate that. I mean, a medical document can only corroborate that there were such injuries and maybe what was the cause of these injuries, which we know to be external injuries. But certainly there's nothing to corroborate that this was a result of his worker union activities. This is something that is not contemplated in asylum law to have this type of burden of proof. And I know the opposing counsels, or actually in the BIA decision, they cited Chebchuk v. INS 257F3-1042, 9th Circuit 2000, stating that the IJ was not unreasonable in looking to corroboration. But that case is extremely different from the case that we have here. In that particular case, the IJ found no less than 22 inconsistencies in testimony, and even after the Board of Immigration Appeals conducted a de novo review of those facts, they found that testimony to be vague and inconsistent. Therefore, certainly the 9th Circuit is not unreasonable in asking for corroborating evidence in that case. But this is not the case that we have here. In fact, in this case, the IJ cited no specific inconsistencies. So your view is Lada, Chebchuk, and Sidhu can be reconciled because of the factual discrepancies in those cases? I mean, Sidhu is the one with the key witness, the father, 45 minutes away. Chebchuk is the one with the 22 inconsistencies, and no finding, unlike here, that the testimony was consistent, detailed, and compelling. Correct. Well, what I'm saying, Judge, is that in this case, this particular petitioner testified credibly. And based upon that, I don't think – I think the law is clear that there is no corroboration that is required. But even if corroboration is required in this case, that the petitioner did submit enough corroboration to his own testimony. Well, I think Chebchuk adds a wrinkle which – that I think some of the IJs are seizing on, which is they – I think it's Chebchuk that says if the IJ finds that they're not credible or doesn't know what to believe. Isn't Chebchuk the one that says that? Yes, Your Honor. And here, this IJ knew – said the testimony was credible. So it doesn't fall within or knows – doesn't know what to believe. Right. But you could – an IJ could make that finding, I don't know what to believe, in every case. That's true. That is true. I agree with Your Honor on that. That exception kind of swallows the role. Right. And what I'm saying is – you know, and that's what I'm saying from the start, is that I believe that the judge did say I know what to believe. He says I do believe this person and his testimony. Well, except for this part, which I find implausible, and therefore I'm going to invalidate what I did believe before. That is essentially what he said. But what I'm saying is even if you can say that the IJ had reason to question this petitioner, and I don't believe that he did, but even if he did, that we did submit corroborating evidence. There is corroborating evidence in this case. There is a medical document that shows that he suffered external injuries. And that certainly can be connected to his testimony that he was physically assaulted by police. And he has a letter from his wife as well. Right. And there were three letters from his wife as well as a letter from a coworker. And although those letters do not specifically state, oh, this person, this is what happened to him, in portions of those letters they mention many worker union activities. They're essentially updates on what is happening since he left. And they mention workers unions and certain arrests and certain police activities. And so those letters also corroborate his testimony. Okay. And I see that I have two minutes left, and I will save the rest for rebuttal. All right. Thank you. Good morning, Your Honor. How are you this week? Yes, I am. Yesterday? Yes. They gave you the tough ones, huh? They love me at my work. How do you feel about your work? I have mixed feelings as well. No, I love it. It's fun. How long have you been with the Justice Department? Just 14 months. Just 14 months? Yes. That's great. It's been fun so far. So may it please the Court, I again am Brooke Maurer, representing the respondent, the Attorney General. As opposing counsel stated, the main issue before us right now is the adverse credibility finding by the immigration judge. In contrast to opposing counsel's contention that the I.J. specifically found the petitioner credible, he noted that he found him credible with relation to the fact that he did, in fact, work in the mine and that he had some activity with some union. But the big material portion of the testimony, the addition of the great escape from the hospital, is where the immigration judge had a very troubling problem with that. What did he find impossible about the escape? Well, some of the things that he pointed out included the fact that he was under armed guards 40 to 50 yards or meters from the actual police station, which is a mine-operated hospital. He was able to escape despite his debilitating cholecystitis acting back up, which rendered him in the hospital in the first place, in a hospital gown and take a taxi to his relative's house where he remained for two months without anybody going to look after him and his family members, let alone the guards. And no one went to his family member's house until I believe it was May of that year, almost seven months later, looking for him after he escaped from the hospital. So that made it very implausible to the judge. Therefore, he looked to other evidence. He even, I believe in the record, he also continued the proceedings where he was troubled so much by the story that was not listed in the application that he asked to continue it and see if he could submit additional documentary evidence or something to help him because he was so troubled with it. What could you submit? I think he was looking at perhaps what the cause of those external injuries were, if he could have another doctor in this area look at it and provide some type of evidence to help him through this so he made the right determination. Okay, and on what basis did he find the escape? So I know what he said, but what kind of record evidence was there about conditions in the Chinese hospital? There was nothing listed in there. However, as this Court has held before, I mean, this would be a material portion of his claim. I mean, he was under lock, guard. His escape isn't really, his claim is a persecution because of his political opinion. How he escaped, I don't know if that really does go to the claim itself. Well, he wouldn't have been covered by armed guards in a hospital if it hadn't been related to his claim. I mean, he's making the claim that he was being persecuted based on his political opinion, and therefore he had to be under watched eye, and these people were allegedly there on three shifts. And he testified that his wife gave a sedative to the guard. Correct, and there were also inconsistencies with that testimony, where he initially testified that he was only notified of this plan on the date that it was enacted, and then changed his mind and said that this was planned at the very beginning and he was aware that his wife was going to do this. So that, too, made it troubling to the immigration judge. But, I mean, in overall, it was enough to support his adverse credibility finding. If there's no further questions. All right. Thank you. Of course. Your Honors, I would like to state that it is true that the immigration judge did ask for additional evidence, and actually additional evidence was submitted, exactly what opposing counsel said. We submitted two statements from doctors in the Los Angeles area, and what we did was we gave them the medical booklet, asked them to look at it, and asked them to give us their opinion. And those are in pages 303 and 304. And in both of those statements, the doctors stated that those wounds were due to external injuries. And so I believe that, again, this was corroborated, that absolutely the wounds that are on those medical booklets were the result of external injuries. Now, obviously, those doctors cannot say what was the specific cause of those, but they certainly can state that they were due to external injuries. Thank you. All right. Fine. Thank you. The matter is submitted.
judges: Pregerson, Archer, Wardlaw